## 36618.   DAY *v.* C. O. SMITH GUANO COMPANY.

DECIDED APRIL 2, 1957—REHEARING DENIED APRIL 18, 1957.

*J. B. Copeland,* for plaintiff in error.

*H. C. Coleman, Eberhardt, Franklin, Barham & Coleman,* contra.

NICHOLS, J.   The agreed statement of facts, on which the case was tried, was as follows: "1.   C. H. Crosby, during the year 1956, resided in Brooks County, Georgia, near the line between Brooks and Lowndes Counties.   He was engaged in farming and cultivated lands in Brooks County and in Lowndes County on which his tobacco crop was grown.   2.   On or about the 5th day of March 1956, the said C. H. Crosby applied to C. T. Day for a loan to be used in connection with the expense incident to planting, growing and harvesting his crop for the year 1956.   C. T. Day advised the said C. H. Crosby that he, C. T. Day, would arrange for the said C. H. Crosby to obtain a loan from First

National Bank, Valdosta, Georgia, which said bank had or would agree to make with his, C. T. Day's, endorsement of the note or notes evidencing the loan, it being understood that the said C. H. Crosby should make, execute and deliver to said bank a bill of sale to the tobacco crop, consisting of approximately 12 acres to be grown on his said farm in the year 1956. 3. The said C. H. Crosby did apply to said bank for such loan and on the 5th day of March, 1956, made, executed and delivered to said bank his note, including interest, for $1,038.41 and a bill of sale covering approximately 12 acres of tobacco crop located on his said farm in Brooks and Lowndes Counties. 4. Said bill of sale was properly attested and legally sufficient in all respects as between the parties, to convey title to the 12 acres of tobacco. 5. Said bill of sale was never recorded. 6. On and prior to the 16th day of May, 1956, the said C. H. Crosby purchased from C. O. Smith Guano Company, Moultrie, Georgia, fertilizers in the amount of $1,261.07, it being understood that the fertilizers would be used in making crops for the year 1956 on his farm in Lowndes and Brooks Counties. A bill of sale for $1,261.07, due August 1, 1956, with interest from maturity at 8 percent, was properly attested and was legally sufficient as between the parties conveying title to the 12 acres of tobacco, as security for the purchase price of the fertilizers. Said bill of sale was duly recorded in the public records of Brooks County, Georgia, on the 2nd day of June, 1956, and thereafter was recorded in the office of the Clerk of the Superior Court of Lowndes County, Georgia, on the 20th day of August, 1956. First National Bank of Valdosta, resident in Lowndes County, Georgia, had no actual notice or knowledge of the existence of a bill of sale held by C. O. Smith Guano Company until some time after the tobacco had been sold, and had no knowledge or notice of the recording of said bill of sale in Brooks County, Georgia, in June, 1956, until some time after the tobacco had been sold, unless the recording itself, by operation of law, would constitute notice. 7. C. T. Day is the owner and operates one or more tobacco warehouses in the City of Valdosta, Lowndes County, Georgia, to which farmers bring their tobacco for sale at public auction after the same has been gathered, as is usual and customary with respect

thereto. 8. After the said C. H. Crosby had harvested and cured his tobacco crop for the year 1956, he brought the tobacco to the C. T. Day warehouse in the City of Valdosta, Lowndes County, Georgia, from time to time during the selling season, and authorized C. T. Day to sell the same at auction along with other tobacco upon the floor of said warehouse for sale on the day on which it was sold. Said sale took place on the 2nd and 7th days of August, 1956. 9. During the conduct of the sale, when the piles of tobacco belonging to C. H. Crosby were reached, they were offered for sale at public auction and were bid off and purchased by one of the several buyers participating in said sale for a sum in excess of $1,600. C. T. Day did not purchase any of said tobacco. The sales were regular. 10. After the sales, and after the lapse of one or more days, C. H. Crosby applied to C. T. Day for the checks representing the proceeds of the sale of his tobacco. C. T. Day was willing and offered to surrender the checks to C. H. Crosby, provided that the proceeds thereof should be credited on the notes of C. H. Crosby at the First National Bank of Valdosta on which the said C. T. Day was endorser. C. H. Crosby declined to take the checks with this understanding, and declined to endorse them, insisting that they should be applied to the note of C. O. Smith Guano Company. C. T. Day continued to hold the checks until on or about the 21st day of August, 1956, when the said C. T. Day endorsed said checks for credit upon the notes of said C. H. Crosby at the First National Bank of Valdosta, on which notes the said C. T. Day was endorser."

Paragraphs 2 and 3 of the plaintiff's petition were as follows: "2. That, on August 22, 1956, the defendant converted to his own use all the tobacco grown during the year 1956 by C. H. Crosby of Brooks County, Georgia, on what is known as the Brown and Whitfield Places in Brooks County, Georgia, to which tobacco plaintiff then held title. 3. That, at the time of said conversion, said tobacco was of the market value of, at least, $1,261.07." The defendant's answer, with reference to these paragraphs of the petition was as follows: "2. Answering the allegations of paragraph 2 of the petition, defendant denies that on the 22nd day of August, 1956, or at any other time, he con-

verted to his own use the tobacco referred to in said paragraph, and denies that the plaintiff had title to said tobacco on said date or at any other time. 3. Defendant admits the allegation of paragraph 3 of the petition that the tobacco in question was worth approximately the sum stated but denies that there was at any time any conversion of said tobacco."

The defendant in his brief states: "The question for determination is this: Did C. O. Smith Guano Company have title to the tobacco in question at the time it instituted its suit in trover? If so, the ruling of the trial judge was right. If not, the judgment of the lower court should be reversed." The questions raised by the defendant's motions to dismiss, as well as his exception to the final judgment are controlled by this question.

The trover action was predicated, as shown by paragraph 2 of the petition quoted above, on tobacco raised in Brooks County, Georgia and, although the agreed statement of facts refers to a part of the tobacco raised by Crosby being raised in Lowndes County, Georgia, the trover action was not based on tobacco raised in Lowndes County, Georgia, and since the defendant in his answer admitted that the tobacco referred to in the petition was worth approximately the sum alleged in the petition, no question is presented as to the title of tobacco raised by Crosby in Lowndes County, Georgia. Therefore, the question is, "Did the plaintiff in trover have title to the tobacco referred to in its petition, and if so, did the custom prevail whereby farmers were permitted to sell their tobacco crops and then pay off fertilizer bills such as Crosby owed the plaintiff in this case and for which the bill of sale to secure debt was given?"

According to the agreed statement of facts the plaintiff sold certain fertilizers to Crosby and took therefor a bill of sale to secure debt on his tobacco crop which bill of sale to secure debt was recorded in Brooks County, Georgia, on June 2, 1956. Prior to this, the First National Bank, Valdosta, Georgia, had lent Crosby a certain amount of money and taken a bill of sale to secure debt on his tobacco crop, however, according to the agreed statement of facts, this bill of sale to secure debt was never recorded, nor does it appear that the plaintiff had actual knowledge of this prior bill of sale to secure debt. Therefore, under Code

§§ 67-1106, 67-108, 67-109 and 29-401 the title of the plaintiff was superior to the title of the bank, and unless there was a custom whereby farmers were permitted to sell their tobacco crops and then pay off any liens such as the plaintiff here held, the judgment of the trial court was not erroneous.

The defendant contends that the excerpt from the agreed statement of facts, paragraph 7, supra, supports his contention that such a custom did prevail. While this court may take judicial notice that in Georgia tobacco is usually sold in warehouses at auction rather than by negotiated sales between the seller and the buyer, it cannot take judicial notice that the holders of bills of sale to secure debts permit farmers to sell the tobacco secured by these bills of sale and divest the holders thereof of the title given them under such bills of sale. Evidence of such a custom would be admissible (see *Bank of Loganville* v. *Briscoe*, 93 *Ga. App.* 558, 92 S. E. 2d 326), and if such a custom had been proved it would have authorized a judgment in the present case for the defendant in trover; however, since such a custom was not proved, and since the excerpt of the agreed statement of facts only showed that tobacco was usually sold at public auction and that that was the way the tobacco in the present case was sold, the contention of the defendant that there was a custom that would divest the plaintiff in trover of his title to the tobacco raised by Crosby in Brooks County, Georgia, was not supported by the evidence. Accordingly, the judgments complained of in the present case must be affirmed.

*Judgments affirmed. Felton, C. J., and Quillian, J., concur.*